May it please the Court, my name is Mario Valenzuela, I'm the attorney in front of the panel, Augustine Pena. I would like to reserve about three minutes for rebuttal. You may do so, Counsel, just keep an eye on the clock. Thank you. I'm here to ask the Court to reverse the conversion of the Chapter 11 case to a Chapter 7 case on three points. Unusual circumstances, no substantial harm, and for public policy reasons. The Court is empowered to dismiss, convert, or appoint a Chapter 11 trustee when a party uses cash collateral. We concede that Mr. Pena used $16,000 in cash collateral in this case. He did so because of unusual circumstances. He was advised by his attorney to use that cash collateral. Does that come within the doctrine of unusual circumstances, having a bad lawyer? It doesn't. What did you say? It does not, Your Honor. However, it's not black and white like that. The reference to the Lane case that states that a party, your attorney's actions are impeded on the party is not black and white. The Court, this Court, in the community dental, has said that when the attorney acts with gross negligence in the case of extraordinary circumstances, that the party shouldn't be punished for the attorney's actions. But that wasn't all that happened. Didn't your client thereafter sort of miss deadline after deadline after deadline to submit budgets, to submit briefs? Your Honor, let me just give you a brief overview. On May 23, 2012, there was a hearing. He provided a combined budget. It wasn't segregated by accounts. At that hearing, the Court expressed concern and asked Mr. Pena to come back with a segregated budget, made a deadline of May 30 to submit that budget, and have a hearing on June 6, 2012. He lost confidence in the attorney, his first attorney. He hired a second attorney, Mr. Gorski. Mr. Gorski, on May 30, when he was hired, he asked for a one-week emergency extension in order to comply with that deadline. The Court never answered that request. On June 6, Mr. Gorski filed a 164-page budget by property, by lender in an aggregate county. He also provided an expense report of all expenses of $16,000. In fact, Mr. Pena had only utilized about $3,200 for personal expenses. The rest of the money was used to maintain the state. We listed on page 20 of the opening brief at least nine reasons of gross negligence by the attorney, but misrepresenting to Mr. Pena that he had done Chapter 11 cases previously, which was not the case. Just the same type of representations in the community where the lawyers were telling the client everything was okay, when it was not okay, when they had not followed an answer. Here the lawyer was telling Mr. Pena, I've done Chapter 11 cases, pay the bills. He paid the bills. He didn't think he'd do anything differently until the May 23 hearing when the Court announced to him, we have a problem. At that point, he quickly tried to create a budget. He was not getting help from his attorney, hired a new attorney. On June 6, not hearing from the Court in terms of the extension, a 164-page budget was submitted with exhibits. It was a budget based on a performing loan for 30 years. It had a 5% interest rate. It accounted for expenses for the property, and it still left an aggregate $10,000 a month available for the organization. The community dental case used the degree of extraordinary circumstances to find gross negligence. I submit to you here that the unusual circumstances exception is just that, unusual circumstances, something a lot less than extraordinary in my opinion. So I think the Court was wrong in not considering the attorney's gross negligence as unusual circumstances in this case. And in determining whether the Court below was wrong, do we employ a scope of review of de novo review, or do we apply abuse of discretion? The Court employs de novo review, but reviews it, the conversion itself, as abuse of discretion. And the Court also looks at whether the Court assessed the law, I mean, weighed the facts at the time and had an erroneous view of the law at that time. I submit to you they did. Kennedy. Well, there's a two-step process for abuse of discretion in the Ninth Circuit in the Hinkson case. All right? One, did the Court get the law right? And two, is the determination of facts supportable by any inferences which can be made by the record? Are you arguing that the court below got the law wrong? And if so, what law did it get wrong? That we can look at de novo. I am arguing that both the law and the facts are wrong. Let's start with the law. Let's go to the law first. What law did they get wrong? 11 U.S.C. 1112b2 sets forth the special unusual circumstances. And it basically indicates that there has to be the Court has to identify unusual circumstances that there would not be a likelihood of confirmation within a reasonable time period that Mr. Pena acted or omitted. There was an act that he caused, i.e., not turning in the budget, and that within a reasonable period that would have been cured. I submit that the evidence before the Court was the opposite. He did cure the ---- So now you're arguing that there was no factual basis for the court below to conclude that there were no unusual circumstances. Exactly. He got the law right. Unusual circumstances, 11b2. Right? 1112b2. But there was evidence which compels a finding that the court below was wrong in not finding that there were unusual circumstances. There was evidence. That's what you're getting at, right? Yes. And what was the evidence which showed that the learned court below did not appreciate the facts sufficiently to exercise its discretion the way it did? Well, both the bankruptcy court and the district court looked at the same evidence, that evidence being that they looked at Mr. Pena's original lawyer's plan of just paying 65 percent across the board of the mortgage on the first deeds of trust. It had no basis. It was just, I'm going to pay 65 percent, whereas Mr. Pena's evidence was supported by records of property valuations, records of how much expenses would be for taxes and budgets for each property. The court, as well as the district court, referred to the first plan from Mr. Aragon, the first attorney, but not Mr. Pena's second plan by Mr. Gorsuch or his outline of what the plan would be. And I also submit that that standard should be lower, too, because he doesn't have the benefit of submitting a 100-plus page disclosure statement at this point. He just has to outline to the court the likelihood of success. And the court didn't weigh that. It weighed it too high of a standard, and didn't consider that evidence that he had a surplus of $10,000 per month, that if he used valuations where he would be able to strip and cram down property values, he wouldn't have to pay the amounts that the court believed he should have to pay. Based on the first plan. Mr. Pena has a draft of his plan. As long as that plan is feasible, it could be any plan he wants. And it was early on at this point. It was two months into the case. He has four months' exclusivity period to submit a plan. The court didn't consider that. Scalia. Counsel, the trustee argues that there may be a waiver problem here. What's your response to that? In other words, was this issue preserved before the district court? I don't believe that's the case. I think he, the appellate counsel indicates that Rule 60 wasn't argued, but the motion for reconsideration was still on Rule 60B. So I don't believe so. To the extent that this Court considers it's a waiver, I'm just simply citing community dental as analogous as an example for this Court to look at where relief is given in a situation where there's gross negligence. It could have been a criminal case for that matter. I'm just saying that gross negligence in this case warrants relief to the client. This client did not take part in the wrong except for missing a deadline of May 30th prior to his knowledge of what was going on. And he stopped and went to the court on an emergency basis for a one-week extension. I believe that we wouldn't be here today if he would have got that one-week extension. And the Court would have considered the submission submitted on June 6th. I'll say my rebuttal. You may do so, counsel. Okay. We'll hear from the other side. We'll hear from the trustee. Good morning, Your Honors. May it please the Court, my name is Tom Armstrong and I represent Trudy Manfredo, the Chapter 7 trustee and appellee on this matter. First of all, we appreciate this Court hearing this matter on an expedited basis. And in the same spirit, we hope that the Court will rule promptly and affirm the decisions of both the district court and the bankruptcy. I'm from the Second Circuit. I'm not sure we do that. Just joking. I appreciate it. Thank you, Your Honors. The appellant appeals today to ask this Court to craft or legislate a new exception to the standard that's already set forth in 1112B2, which Judge O'Scanlan mentioned a few moments ago. And that exception would be, and I quote, setting a new standard on the question of whether gross negligence and ineffective assistance of counsel constitutes extraordinary circumstances warranting relief for the unauthorized use of cash collateral. Ms. Manfredo respectfully submits that. Number one, the appellant. Can I ask you about the word warrant? At this stage is the question. Ask me about the word what? I'm sorry. The word warrant. Does it have to warrant relief or require relief for us to reverse? Well, that was the word that they used, warrant. I think 1112B says that at the, I'll use the trial court, at the bankruptcy court level, Your Honor, that it was in fact that the words were front and center for the June 6th hearing. Why did you use cash collateral without creditor consent or court authority? And the record, and I will go through the record in a few moments, but the record amply demonstrates evidence upon which the bankruptcy court found that conversion was appropriate, and no evidence was proffered by either Mr. Eric Loyan at the later hearing on the motion for reconsideration nor Mr. Gorski as to unusual circumstances. So today to argue under, I call it the Taney decision, Mr. Valenzuela calls it the community dental services decision, but our position is, number one, that the appellant cannot meet the standard under the Taney decision to establish extraordinary circumstances, and secondarily, looking to the clear language of 1112A and B, the bankruptcy court was compelled to convert this case, dismiss it, or appoint a trustee as the debtor failed to provide a showing of the exception or the unusual circumstances under 1112B for the unauthorized use of cash collateral, and that, according to 1112, is cause to dismiss or convert. Counsel, you heard Mr. Valenzuela say that only 3,200 of the 16,000 was used for personal expense. Is that in the record, or is that a consideration? Your Honor, in responding to that question, I do not think that the bottom line is it was cash collateral. I was prepared to argue today, because there was argument in the brief, that there was no use of cash collateral because it was money that they had in the bank prior to the filing of the bankruptcy court. But as Judge Ishii stated at the district court level, he stated three things that were very important. Number one, it wasn't the issue of who collected the rents. It was the issue of whether the rents were, in fact, cash collateral. And under 363A of the code, those rents were cash collateral. Secondarily, under California law, Civil Code Section 2938A, those rents were the security of Mr. Malcolm's client and Mr. Jacquez's client. And thirdly, 552B provides for an automatic perfection of those rents under the bankruptcy code. So there was a cash collateral issue. Whether he used a penny or he used a million dollars, the bottom line is it's still cash collateral. I hope that answers your question, Your Honor. Thank you, counsel. Okay. In April, I argued here, and Judge Silverman made a comment that day, I believe is applicable in this case. He said that the precedent of this court is binding upon this court. And towards that end, I'd like to discuss the Taney case just a little bit. You've had to have a statement by a judge of the court for us to understand that. I liked the statement that day, Your Honor. Fair enough. Yes. If the appellant relied he relied the appellant relies on the Taney case to establish extraordinary circumstances. And in deciding Taney, this court relied upon its prior decision in the United States Alpine Land and Reservoir Company, 984 Fed Second 1047, and specifically page 1049. It's a 93 decision of this court. The court in Taney, citing Alpine Land, held that to demonstrate extraordinary circumstances in the catch-all 60B6 context, that two things must be established. Number one, injury, and secondarily, two, circumstances beyond the debtor's control that prevented him from the proper prosecution of the action in a proper fashion. Turning to the injury prong, the appellant does not argue this point in the brief or in the reply brief, but I infer, Your Honors, that the position is that the injury is conversion of the case to Chapter 7. Now, the appellant contends at page 6, paragraph 2 of his opening brief, that the Supreme Court strongly favors reorganization over liquidation, and also there's a case that's called Marshall, and there's no citation. It's a Ninth Circuit decision, and they cite that case for, and I quote, a consumer debtor's estate will be worth more if reorganized under Chapter 11 than if liquidated under Chapter 7. Now, Doug and I found Marshall. The citation for your benefit is 721 Fed Third at 1032, Ninth Circuit, 2013. Marshall is important in two regards. First, in Appendix A at page 1064, this court cites Marathon Pipeline for the proposition that the core purpose of the federal bankruptcy power is, quote, the restructuring of debtor-creditor relations. Now, I think how we restructure debtor-creditor relations is important. Do we restructure it through a plan of reorganization that is proposed and confirmed, as counsel said, within the exclusivity period or within a reasonable period of time? Or, if on the record as was before the bankruptcy court, is conversion to Chapter 7 an appropriate mechanism to restructure that relationship between the debtor and its creditors? In this instance, the bankruptcy court found on the evidence at the June 6 hearing that conversion was in the best interest of creditors, as outlined under Section 1112B. First, as admitted this morning, there was the unauthorized use of cash collateral. We know there was no consent from the creditors. We know there was no order from the court. Also, as the record reflects, Mr. Malcolm and Mr. Jacquez openly invited the debtor and his counsel to contact them to resolve the cash collateral issue. Now, I would point out to the court that neither Mr. Gorski nor Mr. Irigoyen did this, and you can find that in the record at page 371 and also pages 166-167 and 170-171. Now, Mr. Gorski was the subsequent counsel, and he certainly was aware of these creditors' offer to work with the debtor. He cites in his emergency motion to enlarge time to respond to the May 23rd order at pages, in the record, at 131 and 174, the civil minutes of the Bankruptcy Court. And those minutes, they're very expressed. They state, quote, debtor to prepare budget with assistance of creditors' counsel, a budget as to each property by May 5, 3012, notice of continued hearing to all proper parties, needs accounting of monies already spent, court may appoint a trustee. Also, the district court noted in the record at page 568, lines one through three, that the debtor and debtor's counsel was unnoticed since April 12th of 2012 of his responsibility to file motions for the use of cash collateral or the case could be dismissed, converted, or a trustee appointed sua sponte, and that's in bold at the record. It's the chapter 11 status conference that we use in Bankruptcy Court, and it's in the record at page 61, paragraph three. The last paragraph is in bold. So that was out there. And very, very importantly, Mr. Pena stated at the hearing on May 23rd that he had the budgets together and that he could file the same within one week of that May 23rd hearing, which was the due date of May 30th. That was the date that the Bankruptcy Court ordered. So the credit is Mr. Malcolm. He thought that this was, quote, fabulous. He was willing to work with the debtor in this regard, but that didn't occur. So to summarize on the harm prong under the Taney decision, the harm, if any, in my opinion, was caused by the debtor and both of his attorneys, Mr. Irigoyen and or Mr. Gorski. Mr. Irigoyen, Mr. Gorski chose not to abide by the Bankruptcy Court's order, and as the district court, in my view, properly concluded, they did not follow the Bankruptcy Court's clear directive. They knew they were to work with the creditors, yet they did not. The creditors stated their willingness. I think it's also important, very important, to understand that in the record at page 159, lines 24 through 25, through page 161, the Bankruptcy Court admonished the debtor and debtor's counsel that it could make an emergency order to prevent irreparable harm if the debtor and his counsel came back to court and articulated facts showing that there would be irreparable harm if they could not use cash collateral. This they did not do. So quite simply, the Bankruptcy Court, by the express language under 1112B, which states the court shall convert a case for cause, and I'm paraphrasing, unless the court finds and specifically identifies unusual circumstances establishing that conversion is not in the best interest of creditors. And the court articulated each one of the tests under 1112B, and conversion was the choice on the record before it that it made. Secondly, as to circumstances, and this is under the Taney decision, circumstances beyond the control of the debtor that prevented him from the proper prosecution of the action, I think the factors that I just enumerated demonstrate that the appellant cannot show circumstances that were beyond his control. He was in control of his own destiny with the creditors willing to work with him. I wish I had that in Chapter 11 cases that I do, but sometimes it's the battle of the life. He decided to hire Mr. Gorski. Mr. Gorski chose not to look at them. We know he looked at them. He already cited them in his motion to extend the time. So he had to have known. He cannot argue that he did not. That they chose to roll the dice and ask for a continuance and not get some motion on in that short period of time, I think they took a giant risk. They rolled the dice, and unfortunately, the case was converted to Mr. Pena's dismay. The court also very clearly expressed its concern over the non-authorized use of cash collateral and stated that front and center, the issue for discussion at the June 6th hearing was going to be the unauthorized use of cash collateral. I'd like to move on to the Marshall decision and just a part of that, if I may, Your Honors. It's quoted at page 6, the second paragraph of the opening brief, that, quote, a consumer debtor's estate will be worth more if reorganized under Chapter 11 than if liquidated under Chapter 7. Three important words are missing from that quotation out of the Marshall decision, and those three words are prefatory to what I just stated, under certain circumstances. And then the following language applies. In this case, the court made several findings supported by the record. First, the court found that the only real equity in the estate was about $38,000, and that's in the record at page 453, lines 27 through 28. Secondly, if the court looks to the record, we can look to the list of the 20 largest unsecured creditors in the record at pages 7 and 8, and pages 12 through 14 at Schedule A, the real property list, and importantly at Schedule D in the record at page 19 through 27, the appellant shows in his own bankruptcy schedules that there were undersecured claims in excess of $1,671,000. This is not clear error. From this evidence, it cannot be said that the bankruptcy court was incorrect. It was a reasonable choice to make this finding by the bankruptcy court, and it conforms with the definition of clear error in this circuit. In the Marshall decision at page 1039, this court cites the bankruptcy appellate panel's decision in Lentinen at 332 Bankruptcy Reporter 404 at page 411, and it's a 2005 decision for the definition of clear error. If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. So we believe that the findings in the record were amply supported by the evidence before the court at that juncture. As to the argument that the debtor did not use cash for the other one, I'm not going to touch on that. It's been conceded. The 1112B, unusual circumstances. As I mentioned at the opening, the appellant is asking today that this court craft or legislate a new exception. 1112B already has an exception. Unusual circumstances. The burden was on the debtor and debtor's counsel, both counsel, to demonstrate front and center at the June 6th hearing what those unusual circumstances were. That they were not prepared to do that is problematic for the debtor. The delay, if I might just answer a quick question by Judge Sack, there were many delays in the case, as you initially pointed out. Judge Vea, he made mention of the view of discretion of the bankruptcy court. I think that the clearly erroneous argument that I made a moment ago addresses your question, Your Honor, in that vein. And Judge O'Scanlan, you asked the question of the waiver issue under 60B. I understand that it is an analogy to a 60B6 catch-all, but I think that we already have an exception in 1112B. Thank you very much, counsel. Your time has expired. Thank you very much. Mr. Valenzuela, you have some reserve time. Mr. Valenzuela, taking off on something that your friend said, is there any proof in the record as to why Mr. Pena, who stated that on May 23rd he could file his budget by May 30th, as to 29 residential properties, why he couldn't do that? Was there any unusual circumstances, such as mental incapacity or injury? No, Your Honor, there is no proof to that degree. There is 29 properties in itself is a large endeavor. This is not one property or two second homes. They're all residential properties. They're 29 properties. He has a week to put together a budget. Is there any reason why he couldn't do that? Well, he didn't really have a week, because some of these properties, you can't get reports there. There are fourplexes, there are apartments there that you don't get your ordinary reports that you can subscribe to on the Internet. So it was a little more difficult to craft that information to the segregated budgets, but in doing that, in that week, he wasn't getting the help from his former counsel that he needed to hire a new counsel. But he made the representation that he would be able to put the budget in, and I figure he knew what he was talking about, because he was running a business, right? Your Honor, that's correct. So what is in the record to show that he was unable to fulfill on his promise? That was, if anything, that was his only mistake, because that was the first time that the court. So is your answer that there's nothing in the record which excuses his noncompliance? There's nothing in the record to explain that he could not create a budget that quickly, and it was a mistake of timing. He was under pressure by the court that day, because the court wanted to correct the case, didn't want to extend time. The court had already not answered the one-week extension that Mr. Gorski requested at that time. And that was the first time, June 6th, I'm sorry, May 23rd, where he knew that his prior attorney misrepresented his case to him. So he made a mistake at that point. But that shouldn't cost him his legacy. This is not a he amassed 29 properties over 10 years. He made a mistake, I believe, by pointing out unusual circumstances. This is not a speculator buying homes and selling misfortunes at others. He is amassing homes to rent out to people, collect rents, pay taxes in the communities where he owns properties. And he made a mistake of a one-week mistake, which he asked permission in an extension of one week, and shouldn't lose his legacy because of that. Let me just add a few points here. The Palis Council indicates that on the petition, you know, it was red. Of course, anybody that comes into bankruptcy is red when they come in for initial petitions. But there are tools and vehicles in the bankruptcy code that allow us to make that red black, priming down, valuations. We were at the very onset of that process. So there was a way out of there. There was a way that reorganizes this debtor. The initial 164-page budget demonstrated that. It provided the expense, the very thing that the bankruptcy court wanted, show me the expenses. It provided that. The court didn't hear that. In fact, the court didn't want to hear Mr. Gorsuch. He had filed his substitution attorney a week earlier on May 30th, but told Mr. Gorsuch, you're not the attorney of record. So Mr. Erdogan argued it for a brief moment, and then the court opened it up to any other parties. At that point, Mr. Gorsuch was able to provide the court a few comments, re-asked for the extension again. The creditors could have had that opportunity to look at the budget. The court could have analyzed that budget, but the court didn't. It just converted it. The court solicited the U.S. trustee's office for their opinion. The trustee was also torn because she recognized that Mr. Pena did not get good advice by counsel and took no position. It was, I think, Mr. Tran that finally said, I think this is likely a case for conversion. But then he also said, or very strict deadlines. He, too, was not convinced that it was time to close the case there. But he was echoing the court's concern because I think the court was determined to convert that day. Let me add more in here. In terms of the gross negligence, and I'm trying to set a new standard. I'm not trying to set a new standard. The court in community dental already set that standard. What I was proposing to the court, that if this court found that Mr. Pena was not grossly negligent, that, you know, these are the negligences of attorneys, you chose your attorney, his actions are imputed on you. I was suggesting to this court that you find heightened negligence, but only if you see that Mr. Pena took every effort, once he knew the problem, to fix it and he wasn't part of the original problem. So that's the standard I wanted this court to consider if it didn't find gross negligence. I think there is gross negligence here because the court itself said it's basic due diligence to look at the assignment of rents and the deeds. It wasn't. It didn't happen here. Pelley's counsel conceded that, and they're at Pelley's grave. I think my time here. Your time has expired, counsel. Thank you, Your Honor. Thank you very much. The case just argued will be submitted for decision.
judges: O'SCANNLAIN, Sack, BEA